Your Honor. Good morning, Your Honors. May it please the Court. Jessica Groff for Appellant Luis Martinez. Your Honors, this case is about a straightforward application of the elements of Texas aggravated assault to the undisputed facts. There are two reasons this Court should reverse and remand to the District Court. First, the District Court erred in assessing a four-level guideline enhancement for use of a firearm in connection with aggravated assault, because Mr. Martinez did not threaten anyone with imminent bodily injury. And second, the government failed to prove the error is harmless. Turning to my first point, the elements of Texas aggravated assault were simply not met here. The District Court found that Mr. Martinez committed aggravated assault by threat, and that offense requires, as elements, that the defendant intentionally or knowingly threatened another with imminent bodily injury. Now, there are two aspects of Texas assault jurisprudence that are particularly important here. One, there must be an identified victim, and two, an imminent threat is one that is on the verge of happening. In Olivas v. State, the Texas Court of Criminal Appeals defined a threat as a declaration of intention or determination to inflict punishment, loss or pain on another, or to injure another by commission of an unlawful act. But none of the potential victims identified by the government were threatened with imminent bodily injury. But we know we have the girlfriend, so what does Texas law say about imminence? You know, how much needs to be there to connect the dot? Well, the preeminent case, Texas case on imminence, is the Court of Criminal Appeals case Divine v. State, where the court held that an imminent threat is an immediate threat, one that is on the verge of happening. And in that case, the CCA overturned a conviction where the defendant threatened her ex-husband with harm if he did not pay her, and then they met face to face for the exchange. But the court held that that threat was not an imminent one because it was not immediate, about to be carried out. Now here, we have two different kind of aspects of how each of these three victims were not threatened. And then the police, while threatened, did not receive, or Mr. Martinez... How could your client's statement that he was going to shoot people, how could that, why couldn't that include whoever happened to be around, including the girlfriend, people on the street, the 911 caller? He said he was going to, quote, shoot people, unquote. And why isn't that enough? It's not because for assault, the gravamen of the offense under ex parte didn't, is each victim. So if we start with the girlfriend, we can see on pages 209 and 210 of the record that the girlfriend told police that Mr. Martinez, a diagnosed paranoid schizophrenic, was afraid that people were after him, and he was talking about potentially shooting those people. But she told police that she understood that was not directed at her, and her statement is the only other witness to the event, which was the 911 caller. She said that Mr. Martinez didn't point his gun at his girlfriend, he didn't advance on his girlfriend, he didn't make threatening statements to her. And that is a requirement for the offense. As to the 911 caller as the victim, here the government has tried to read an element into the offense that isn't there. And that is that Mr. Martinez scared the 911 caller. But when the defendant places another in fear, the Texas assault statute only permits conviction when the defendant makes an intentional or knowing threat. The CCA made clear that assault is a conduct-oriented offense, not a result-oriented offense. So with the 911 caller, we see on page 209 of the record that Mr. Martinez did not interact with her at all, and likely was not aware of her presence. She was on a property adjacent to Mr. Martinez's apartment complex. They were separated by a fence, and they simply had no interaction. And she told police that while she was alarmed, Mr. Martinez did not threaten her. So this is similar to the CCA case Benjamin v. State, where the court overturned a conviction when a bystander was not actually threatened. And it's also similar to Divine v. State, where it wasn't enough that the purported victim was scared, because the defendant did not make an imminent threat against that victim. At any point along the way, did your client ever contest his mental capacity to commit aggravated assault? Was that ever put at issue? No, Your Honor, because it wasn't necessary. Our position has always been that he did not threaten at all the girlfriend or the 911 caller, and that he did threaten police, but that it just wasn't imminent. Now, turning to the final purported victim by the government as the police, of course we acknowledge that Mr. Martinez said he would shoot the police if they were called. But he didn't make that as an imminent threat. When Mr. Martinez made that statement, the police were not unseen. There was no information that Mr. Martinez knew about the 911 caller, that he was aware that the police had been called. So his threat was more attenuated even than that in Divine, where the CCA held that it was not imminent. Now, the government has made no attempt to address Divine, and that is significant, because the facts here show even more that there was no imminent threat. Now, in Olivas, the CCA explained that a threat occurs at the time it is made by the defendant. So when Mr. Martinez actually encountered the police, he did not make a threat. At that point, he had wrecked his vehicle. We can see from the record that he had a rather gruesome skull fracture, and he was arrested without incident. So his earlier comments could not be made imminent by the fact that he later happened to encounter police. Turning to my second point, the government failed to show that the court would have given a 37-month sentence for the same reasons had it granted Mr. Martinez's objection. Now, the government appropriately concedes that the Ibarra-Luna standard is the one that applies here, and that is because the district court never acknowledged the correct guideline range. We can see on page 157 of the record that the court gave a generic, if my guideline calculations are later shown to be incorrect, this would be the sentence. But the court nowhere at sentencing acknowledged the 27- to 33-month range that should have applied. So under Ibarra-Luna, the government must prove that the court would have given 37 months for the same reasons, even if it had correctly determined the guideline range. But there's no evidence of that here. The court gave exactly the bottom of the guideline range, three years and one month, which does not correspond to any other factor, such as a prior sentence that Mr. Martinez may have received. So this case is from Mejia, where the court found that despite the district court statement that it had considered the argument of the parties and that it would impose the same sentence regardless, that vague statement was not enough to convince the court that the sentence was uninfluenced by the erroneous guideline calculations. And here, without the guidelines, 37 months is just odd. It's three years and one month. It's a prime number. It just isn't tethered to anything else besides the fact that it happens to be the bottom of the guideline range. Well, it's tethered to something else in the sense that the district court said, this is a textbook example of a case where I would otherwise upwardly vary. The district court did talk about other 3553 factors, including the fact that the criminal history of your client started when he was 13, and then said, but I'm going to stick with 37, and it's the same sentence I would give. And this is the thing I don't understand about Ibarra-Luna, because the court, you didn't quite get the whole sentence from page 157 of the record. The court said, the same sentence I would have opposed otherwise pursuant to 3553 after having gone through the 3553 factors. So I'm not sure if we have a case where we have said that's not harmless error, even when the district court goes through the factors, even when the district court explains the sentence pursuant to those factors, and then even when the district court says it's the same sentence I would have given regardless. Your Honor, I think this court does have cases like that. One that comes to mind is United States, which did acknowledge the correct guideline range, but did tie the sentence ultimately given to the 3553A factors. But under Ibarra-Luna, what makes this important is that it is the government's burden to show 37 months would be the sentence for these same reasons. And here, there's just no evidence of that. While the court did, of course, do as it is required to do, which is acknowledge the 3553A factors and discuss Mr. Martinez's sentence, and this court has refused to find that as mere coincidence, that the court happened to give 37 months, despite the fact that the guideline calculation may have been erroneous. So here, the error just simply cannot be harmless, despite, even though the court met its obligation to discuss the 3553A factors. Perhaps if the court had said, I would give a four-level increase because I consider this to be worthy of that. You know, there may be other facts that the court could have put into the record, but that's just not the case here. The court stuck to the guidelines and still gave kind of a generic, this would be my sentence regardless of the guidelines. So what's the specific relief you want from the panel? I mean, you leaned most hard on divine. You think we should find that this case is akin to divine bestate? Is that the principal relief you want? Your Honor, correct. I would ask the court to find that the elements of aggravated assault were not met here because he did not make an imminent threat, and then reverse and remand for resentencing absent this four-level enhancement. If there are no further questions, then I would just ask that the court reverse and remand. Okay. Any other questions? All right. All right. Thank you. All right. Let's see what the government has to share. Did you handle the case, or you just have it on the field? Good morning, Your Honor. I did not handle this case at the trial level. I didn't write the brief either. I have just the argument for you today. You're giving yourself a lot of cushion, right? All right. May it please the court. Amy Birch for the United States. Your Honors, the district court did not clearly err in the application of the four-level enhancement under the guidelines because Mr. Martinez did possess the firearm in connection with another felony offense. Your Honors, I would point out that although Mr. Martinez is arguing for a de novo standard of review, saying that they're not arguing about the facts, the actual thing that they're arguing about is whether a threat occurred. That's a factual finding. And they're also arguing about whether the threat was imminent and that it could be carried out quickly. That is also a factual finding. And for those reasons, we would ask the court to review for clear error and determine that here, a factual finding is not clearly erroneous if it's plausible in light of the record as a whole. And certainly here ... It's plausible, but it can't be a complete stretch, right? I'm sorry, Your Honor? I mean, it's to be plausible, but it can't be a complete stretch. Correct. So, as the Louisiana lawyer in the middle here, help me understand. You know, counsel has argued strenuously, no matter how we construe the facts, the facts don't fit, so to speak. So lean in on how, why we can find plausibility. Certainly, Your Honor. And I'm not suggesting that it's a complete stretch at all. I don't ... It's not a stretch. A person commits aggravated felony when he intentionally or knowingly threatens another with imminent bodily injury while using or exhibiting a deadly weapon. Do this. Line up the three possibilities. The girlfriend, the 911 call of the police. Yes. And then help me do my checklist. Sure. So, the girlfriend. We have Mr. Martinez inside the apartment, takes her keys, wants to take her car. She's blocking the doorway. He hits her to get outside to go to her car. Gets to her car, and instead of getting in the car, which is what presumably he wants to do, he gets in the car and he pulls out a loaded shotgun. And then he holds that loaded shotgun outside while he proceeds to argue with her and yell about shooting people. And she is a person. He yells about telling bystanders, hey, go ahead, call the police. Essentially daring anyone who's witnessing what this is a classic domestic dispute, witnessing this, go ahead, call the police. I'll shoot the police too. We see that this is a pattern of behavior for him because in the record on page 172 to 73 in paragraph 46 of the PSR, he's done this exact type thing before where he's arguing with the girlfriend and threatening to shoot anybody that calls for assistance. And under Texas law, a threat... I thought the threat was to shoot people who were out to get him. So there's never an out to get him. The girlfriend is the one who suggested to police once they were called that he was having a schizophrenic episode and that he wasn't really talking about shooting people. He's talking about shooting hypothetical people. We do know, at least inferred from the record, that he had committed a robbery about an hour before and was talking about, according to her, if people are coming after me, then there is a plausible reading in the record that he is talking about actual people who may be coming after her. And in any event, he is... Threats can be communicated by more than words. So the government's position is there's two types of threats here. We have a word threat, I'm going to shoot people, and we have an action threat, which is I've grabbed a loaded shotgun and I'm holding it while I'm screaming about shooting people. And it's a plausible inference from the record that the girlfriend was in fact threatened because she then retreats. She relents on her keys and her car and retreats to her apartment to no longer engage with this person who's yelling about shooting people while holding a loaded shotgun. Keep going through Judge Stewart's checklist. So we've got the girlfriend. We've got the girlfriend, yes. So then we have the 911 caller. The 911 caller is at a property adjacent to the... So our defendant's at an apartment. There is an Abram Inn nearby where the 911 caller is. So the 911 caller observes this, is alarmed enough to know that this person has, at least appears to have a firearm, does have a firearm and is yelling about shooting people. She calls the 911 and reports what is going on. Is there any evidence that Martinez saw the 911 caller, knew of the presence of the 911 caller, any of that? So we don't know for sure from the record that he knew of that specific 911 caller. There's other evidence in the record that there was a second neighbor nearby, that he may have been aware of that neighbor. That neighbor said he never pointed the gun at me and that neighbor is not... Other than the general allegation of, as you suggested earlier, look, anybody in the vicinity is foreseeably a victim. When you're threatening to shoot people and you're... At least one of the police reports indicated waving a shotgun around. I think others said he had the shotgun down. Another one said it was displayed. There are different ways it's been described in the record. But in any event, there's no question that at least three different people, girlfriend, 911 caller, neighbor two, knew this guy's armed. According to the Texas law that we at least cited in our brief, that a rational trier of fact, that being here the district judge, by a preponderance keeping in mind, could have inferred plausibly from the record that the 911 caller was a victim of this overarching threat. If someone were to come in here and wave a gun around and threaten to shoot people, it wouldn't be less of a threat because he didn't specifically say, Ms. Birch, I'm going to shoot you, but I'm not going to shoot the other people. That would be a threat to a real victim or victims. We also have the third set of threats, which were to the police. And there, there was a the daring to call the neighbors, go ahead, anybody, call the police. If they come, I'm going to shoot them, too. And Mr. Martinez has suggested, well, that's too attenuated, that that's conditioned on the police coming. But we also point out that in addition to that, Mr. Martinez has jumped in the car, he's taken off at a high rate of speed, he crashes out approximately one mile. So we're very close in our timeline. And then one of the police officers, officer who comes up on it, sees him making these furtive movements in the car like he's reaching around. And at least under one Texas case, Tidwell, those types of furtive movements, reaching around in the vehicle only moments after talking about intent to shoot police, qualified as being acts that convey or communicate a threat. And so because we have at least three different plausible victims, the district court reasonably, correctly found that Mr. Martinez possessed this firearm in connection with another felony. And look, it makes sense under the guidelines, right, that it's one thing to just be a felon in possession. You're not supposed to have a gun. But you have one, and so here's the punishment that the guidelines suggest be meted out for that. But then if you do something more, like use it in connection with another felony, then it makes sense that you would have a more severe punishment. And certainly here, when you have someone who's not supposed to have a gun in the first place, and then they have it, and it's a loaded shotgun, and we've got it around people, and we're yelling about shooting people and shooting police, that's the exact type of behavior that warrants the enhancement. So do you want us to sort of cognitively accumulate the 1, 2, 3 on the checklist to find plausibility? In other words, are you asking us to sort of cumulatively stitch the girlfriend, the 9-1-1 call to the police to end up concluding, okay, it's plausible? Or you feel strong enough in your arm that one of these gets to home plate? Because it sounds like you're arguing, okay, 1, 2, 3, he's done all this stuff, therefore, King's X. I'm not trying to put words in your mouth, but I'm trying to understand. Are you wanting us to find the accumulation, there's three people, they're not isolated, that from that, the plausibility gets there? Not exactly. I think that the government's position is that any one of these would be satisfied, but if the court had concerns or worries about the girlfriend or the 9-1-1 caller or the police, then the court would be able to find, okay, you don't think he assaulted the girlfriend? Mark that off. We definitely have the next one and the next one. The only way you get to reversible error is if the court were to find none of those three qualified as an aggravated assault. And if you were to look at each of those individually and say none of those are an aggravated assault, then I think we're where Mr. Martinez hopes you will go. But, no, I don't think it's a cumulative analysis. Was there any showing, I know you said he had the loaded shotgun, that he waved the shotgun at the girlfriend or had it pointed towards her or is he just sort of brandishing it generally? There's conflicting portions of the record. The girlfriend said he had it pointed at the ground, that's what she told the police. The neighbor who saw it said it was displayed and then there's one place in a police report from an officer who got a 9-1-1 call that indicated it was waved. But it's unclear if the officer just surmised that from the nature of the 9-1-1 call. In any event, we know it was able to be seen because we know that the girlfriend knew about it, the 9-1-1 caller knew about it and the third neighbor knew about it. Your Honors, we also would point out that should the court determine that the four-level enhancement was improperly applied, the district court specifically said, if I'm wrong, and this was the only enhancement, so it's not like we're looking at multiple types of iterations of the guidelines, the district court specifically said, if I'm wrong about this four-levels, this is the same sentence I would impose regardless and went on to talk about how this case was a textbook example of a case that would warrant an upward departure or an upward variance. The court emphasized Mr. Martinez's criminal history, twice talked about his likelihood of recidivism and basically told the court or told his counsel, Mr. Martinez's counsel, look, I'm going to take pity on your client today because you've made these arguments about the enhancement and you've made these arguments about him having this head trauma, but the court at least believed that this case was warranted a sentence in the high end of this guideline range, which would have been 46 months or higher if he were going to go higher than the guideline range, which here was 37 to 46 months, and at least in Rayna Aragon, this court said where the district court is clear, plain and firm about what it would have done and the reasons why, then the government has met its burden of showing that the error is harmless. I do acknowledge that there are some cases that talk about, well, when it's the bottom of the wrong guideline, then we're going to say that the wrong guideline influenced the sentence. There are that line of cases, but there are also other cases that say, look, the court considered the enhancement, it said if the enhancement didn't apply, this is still what I would do. We have no reason to not take the district court at its word. It talked about the 3553A factors that it had concerns about. Certainly those concerns are borne out here, supported by the record, and so we would ask the court, should it reach the level of having to find that any error was harmless, based on the explicit statements of the district court. All right. Any other questions? All right. Thank you. Thank you. All right. Ms. Graff, back to you for rebuttal. Your Honor's two points on rebuttal. First, to address the girlfriend and the 911 caller as victims. Essentially what I'm hearing from the government is that what Mr. Martinez did was scary, and it was. We would definitely concede that, but that doesn't make it aggravated assault by threat. And I think the most important case, perhaps on that point, is Olivas v. State, the Texas Court of Criminal Appeals case. And in that case, the CCA explained that the individual victim must be threatened, and they pointed to a prior case, McGowan v. State, where the defendant threatened and then stabbed a woman in front of her mother, and then while the mother's back was turned, stabbed the mother. But the CCA held that he had not committed aggravated assault by threat against the mother, because he had not specifically threatened her. He threatened the daughter, even though what he did surely was scary to the mother. So while Mr. Martinez's actions here were concerning, there is simply no evidence in the record that he threatened his girlfriend or the 911 caller. I would also point out that the government points or says that Mr. Martinez was daring everybody around to call the police. That's not in the record. What we have in the record is that he's in an argument with his girlfriend, who understands his mental condition, and is saying, please don't leave, and he's saying, I'm out of here, and arguing with her. Another thing that I think is concerning about the government's position on that is it simply, it seems to be that it would mean that anyone who is armed while having an argument has committed felony aggravated assault. And I think that could be problematic in a constitutional carry state like Texas. But what we have here is that aggravated assault by threat requires an intentional knowing threat against the specific victim. The government's position against the 911 caller also seems to be that anyone who hears scary statements is a victim. But what the government is actually describing is the Texas offense of deadly bodily injury. And that's exactly what Mr. Martinez was charged with by the state, and that is a misdemeanor offense, and it fits with the facts here. Turning to the police, again, the threat must be imminent at the time it was made. So while Mr. Martinez later got into this wreck, it's important to note, one, he wasn't running from the police. The police didn't have their lights on. They weren't chasing him. He was obviously having some sort of episode, and he wrecked his car and fractured his skull. So the furtive movements he made at that time, that couldn't construe or that couldn't turn his earlier statements into an imminent threat. And I also want to just briefly distinguish the case in Tidwell that the government referenced. In Tidwell, the defendant there made an imminent threat when she told a police officer, told the cop face-to-face while holding a gun, to leave or I'm going to shoot you. That is a totally different scenario than what we have here. When Mr. Martinez was making his comments about police, they weren't present. He had no reason to believe that they would be, and therefore it couldn't have been an imminent threat. And I would also briefly point out that the government discussed, you know, the purpose of the guideline is to give people worse punishment for worse behavior. But if the district court wants to account for worse behavior, it certainly has the prerogative to do so under the 3553A factors. That doesn't mean that the guideline is supposed to encompass behavior that is not a felony. Second, I would also just like to touch on the standard of review here. In this court, in United States v. Zapata-Lara, said that when the defendant's argument does not concern the specifics of the fact finding, but whether the facts found were legally sufficient to support the position of the district court. We all have the same facts and we're just applying the elements of the offense. But either way, even under clear error, I would point out that the facts here just don't show that the district court's finding was plausible in light of the record as a whole. And turning briefly to harmless error, of course we admit that the court gave reasons for its sentence. It did as it was required to do to address the 3553A factors. But the government simply can't prove that it would have given this 37 months for the exact same reason, had it known that what Mr. Martinez did was not aggravated assault by threat, and it clearly believed that it was. The government's position simply cannot be reconciled with cases in this court such as United States v. Zep Mejia or United States v. Dujan, both cited in the briefing, where the court gave extensive reasoning. For instance, or in Zep Mejia, where the court calculated both ranges and gave a sentence in the middle with an explanation as to why. That didn't happen here. So we would ask that the court reverse and remand. All right. Thank you very much. Appreciate it. Ms. Graff, we note that you are court appointed.